# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

GRISEL MORALES-GUADALUPE,

Plaintiff,

v.

ORIENTAL BANK AND TRUST, et al.

Defendants.

CASE NO. 16-1535 (GAG)

## OPINION AND ORDER

Plaintiff Grisel Morales sued Defendant Oriental Bank & Trust for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* Morales also invokes the Court's supplemental jurisdiction to bring claims under Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 *et seq.*, and Puerto Rico Law No. 80 of May 30, 1976, P.R. Laws Ann., tit. 29, § 185a. Pending before the Court is Oriental's motion for summary judgment (Docket No. 19); Morales's motion to strike Oriental's statement of facts and motion for summary judgment (Docket No. 28); and Oriental's motion to strike Morales's affidavit under the sham affidavit doctrine. (Docket No. 36). As discussed below, Oriental's motion for summary judgment is **GRANTED**. Morales's motion to strike Oriental's statement of facts and motion for summary judgment is **DENIED**. And finally, Oriental's motion to strike Morales's affidavit is **DENIED**.

### I. Preliminary Matters

Before considering Oriental's motion for summary judgment, the Court addresses three issues: Morales's motion to strike, Local Rule 56 compliance, and Oriental's motion to strike.

A. Morales's Motion to Strike

Morales moves to strike Oriental's Statement of Uncontested Material Facts (SUMF) and motion for summary judgment because they expose Morales's date of birth, which violates the E-Government Act of 2002 and Local Rule 5.2. (Docket No. 28 at 1). Local Rule 5.2, in compliance with the E-Government Act of 2002, instructs parties to "redact, or . . . partially redact where inclusion is necessary," information such as dates of birth. L. Cv. R. 5.2 (a). "If an individual's date of birth must be included in a pleading, only the year should be used." Id. (a)(3).

Oriental asserts it included the full date of birth involuntarily, and asks the Court's permission to refile a redacted SUMF or convert the SUMF into a restricted document. (Docket No. 34 at 2-3). This is a fair and more efficient way of addressing Morales's concerns at this stage of the litigation. Thus, the Court shall restrict public viewing of Oriental's SUMF at Docket No. 20. Morales's motion to strike is **DENIED**.

B. Local Rule 56

Before proceeding to the merits of the summary judgment motion, the Court addresses two issues regarding Local Rule 56. The first is Morales's evidentiary objections to most of Oriental's SUMF. The second is Oriental's failure to reply to Morales's statement of additional facts.

*1. Morales's Evidentiary Objections*

Local Rule 56(b) requires a party moving for summary judgment to include a "statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." L. Cv. R. 56(b). The opposing party "shall admit, deny or qualify the facts supporting the motion for summary judgment . . . ." Id. (c). Per the Federal Rules of Civil Procedure, in its opposition, "[a] party may object that the material cited to support

**Civil No. 16-1535 (GAG)**

or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56.

Morales objects to twenty-two of Oriental's forty-two facts based on relevance. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Morales challenges evidence of prior work warnings (Docket No. 20 ¶¶ 3-6, 20-23), Oriental's Employee Handbook, id. ¶¶ 8-14, Morales's duties and responsibilities, id. ¶ 17, checks that were physically damaged in the branch where Morales worked as Operations Manager, id. ¶ 25, Morales's handling of negotiable instruments, id. ¶ 29, and her substitution after being terminated, id. ¶¶ 38-39, 41-42. All of this is relevant to determine if Oriental discharged Morales for legitimate or pretextual reasons and satisfies the low standard set forth by Rule 401.

"Honest argumentation and clear presentation of the issues and facts help the Court tremendously. The opposite burdens the Court just as much." Natal Perez v. Oriental Bank & Tr., No. 16-1543, 2018 WL 618598, at *2 (D.P.R. Jan. 30, 2018). Copying and pasting the same relevance objection, which borders on frivolous, burdens the Court. It also risks errors, unless Morales owns a time-traveling DeLorean. (Docket No. 25-1 ¶ 22) ("this incident *in 2014, 5 years before* the discharge") (emphasis added); see BACK TO THE FUTURE (Universal Pictures 1985) ("The way I see it, if you're gonna build a time machine into a car, why not do it with some style?"). Counsel should desist from walking so close to the edge of the line that separates zealous advocacy from vexatious litigation.

2. *Oriental's Failure To Respond To Morales's Statement of Additional Facts*

When an opposing party submits additional facts, like Morales in this case, the moving party may reply. In its reply, the moving party must "admit, deny or qualify those additional facts"

submitted by the opposing party. L. Cv. R. 56(d). If it fails to properly controvert those additional facts, the Court can deem them admitted. L. Cv. R. 56(e).

Oriental did not submit a reply to Morales's statement of additional facts. Oriental was supposed to admit, deny, or qualify Morales's statement of additional facts. By failing to do so, the Court must deem all of Oriental's additional facts as admitted to the extent supported by admissible evidence in the record.

C. Oriental's Motion to Strike

As discussed earlier, a party can contest the admissibility of the opposing party's supporting evidence. FED. R. CIV. P. 64. Although Oriental did not admit, deny, or qualify Morales's additional facts, it moved to strike an affidavit that supports most of these facts. Naturally, if the Court granted Oriental's motion to strike the affidavit, those additional facts would lose their evidentiary support and collapse as well. Here, the Court can decide the case in Oriental's favor without ruling on its motion to strike Morales's affidavit at Docket No. 36. Therefore, Oriental's motion to strike is **DENIED**.

The Court will take this opportunity to explain why Oriental's motion to strike does not properly controvert Morales's additional facts under Local Rule 56. The reason is simple: if the Court denied the motion to strike on the merits and Oriental did not admit, deny, or qualify Morales's additional facts, Local Rule 56 would oblige the Court to deem the additional facts as admitted. Therefore, the proper procedural approach would have been to do both: admit, deny, or qualify, as well as file the motion to strike.

II. **Relevant Factual and Procedural Background**

Grisel Morales was born in 1962 and worked at Oriental Bank from 2012 to 2015. (Docket Nos. 20 ¶¶ 1, 7, 37; 25-1 ¶¶ 1, 7, 37). In 2012, she signed a document certifying that she received

**Civil No. 16-1535 (GAG)**

and read copies of Oriental's policies, including its handbook. (Docket No. 20 ¶ 8). The handbook governs all employees; it bans insubordination and disrespect, prohibits providing false information in any required document, and forbids encouraging other employees to violate its rules. Id. ¶¶ 8-14. A year later, Morales became Branch Operations Manager. (Docket Nos. 20 ¶ 15; 25-1 ¶ 15). As the title suggests, she was in charge of all of the branch's operations. (Docket Nos. 20 ¶ 16; 25-1 ¶ 16).

In 2013, Oriental's regional manager commented that the bank wanted to bring in younger employees, new blood, and new ideas. (Docket No. 25-1 at 14, ¶ 8). Human Resources also proposed and delivered "a more youthful" looking uniform. Id. Also that year, Oriental discharged a fifty-six-year-old operational manager due to an alleged reorganization. Id. ¶ 10.

On August 29, 2014, Morales received a written warning regarding her performance. (Docket Nos. 20 ¶ 20; 25-1 ¶ 20). She was admonished for encouraging her supervisor to cut out a teller's signature from a mistaken report and paste it into a corrected version because the teller was not available to sign the new document. (Docket Nos. 20 ¶ 21; 25-1 ¶ 21). She claims she was joking. (Docket Nos. 20 ¶ 21; 25-1 ¶ 21). Oriental says the suggestion violated its policies; Morales denies that it did by repeating that it was a joke. (Docket Nos. 20 ¶ 22; 25-1 ¶ 22).

On October 10, 2014, Oriental issued Morales another written warning for failing to inform her supervisor that the Vault Reconciliation Report reflected a difference in the physical and electronic cash count. (Docket Nos. 20 ¶ 23; 25-1 ¶ 23). Morales admits to having received the warning but disputes the existence of said difference, claiming that she did not have to inform her supervisor of a difference that did not exist. (Docket No. 25-1 ¶ 23).

Two more incidents occurred in December 2014. The first incident concerned twenty-one sheets of checks that were physically damaged by the branch's printer. (Docket No. 20 ¶ 25; 25-1

¶ 25). The second incident involved provisional debit cards. As branch operations manager, Morales was a custodian of the provisional debit card report. (Docket Nos. 20 ¶ 26, 20-1 at 106; 25-1 ¶ 26; 25-2 ¶ 14).[1] Morales admitted in her deposition that the reports for December 2014 and the first two weeks of January 2015 were missing. (Docket No. 20 ¶ 32). Nevertheless, she contended in a later affidavit that they were prepared. (Docket No. 25-1 ¶ 32).[2]

Finally, Morales also had an incident with Mr. González, her thirty-five-year-old supervisor. In 2014, Morales informed Human Resources that González was incurring "in operational faults." (Docket No. 25-1 at 15, ¶ 11). Indeed, Human Resources was informed that González used an unregistered provisional debit card and kept it in his desk. Id. ¶ 12. An investigation also revealed that González looked through Morales's belongings when she was not present. Id. ¶ 14. Despite these violations, Oriental did not discharge González. Id. at 15-16, ¶¶ 13, 15.

Ultimately, Morales was terminated from her employment on February 6, 2015. (Docket Nos. 37 ¶ 25; 25-1 ¶ 37). After exhausting administrative remedies, she sued Oriental for age discrimination on March 28, 2016, claiming that she was discharged because of her age. (Docket No. 3). Oriental moved for summary judgment; Morales filed a motion to strike; Oriental filed

---

[1] Oriental moves to strike the evidence supporting Morales's "denial" in ¶ 26 as contradictory. It is not. In her deposition, she was asked if she was "*a* custodian" and she answered yes; in her affidavit she says nobody was "*the* custodian as such." (Docket Nos. 20-1 at 106; 25-2 ¶ 14). Also, despite what Morales's submission says in ¶ 26, the cited affidavit stipulates a qualification, not a denial. (Docket No. 25-1 ¶ 32); see Natal Perez, 2018 WL 618598, at *2 (D.P.R. Jan. 30, 2018) (explaining that a qualification limits, a denial states something is not true).The Court will treat as undisputed that she was a custodian, but not necessarily the only one.

[2] Oriental also moves to strike the evidence supporting this "denial" as contradictory. Again, this is not necessarily contradictory. Drawing all reasonable inferences in Morales's favor, the reports could have been prepared but gone missing. Second, despite what Morales's submission says in ¶ 32, the cited affidavit qualifies the fact that they were missing—it does not deny it. By saying that they were prepared and explaining that they did not have a consecutive numbering, the qualification allows an inference that they had been misplaced rather than not prepared at all. (Docket No. 25-2 ¶ 15).

another motion to strike; and the parties responded to each other's arguments. See Docket Nos. 19, 20, 25, 26, 34, 35, 36, 39, 40.

III. **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all

**Civil No. 16-1535 (GAG)**

reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### IV. Discussion

Morales alleges that she suffered age discrimination under the ADEA, that Oriental willfully violated the ADEA, and related supplemental state law claims. In light of Morales's insufficient evidence of material facts, Oriental's motion for summary judgment is **GRANTED**.

### A. ADEA

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff asserting a claim under the ADEA has the burden of establishing 'that age was the "but-for" cause of the employer's adverse action.'" Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). Absent direct evidence of discrimination, the Court addresses an ADEA age discrimination claim under "the familiar three-step framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973)." Id.

In the first stage of the McDonell Douglas test, the plaintiff must establish a prima facie discrimination case. Id. This requires a plaintiff to show: "[1] that he or she was at least 40 years old at the time of discharge; [2] that he or she was qualified for the position but [3] was nevertheless fired; and [4] the employer subsequently filled the position." Id. If the plaintiff establishes a prima facie case, the burden shifts to the employer to "produce a legitimate, non-discriminatory reason for the termination." Id. (citing Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012)).

**Civil No. 16-1535 (GAG)**

If the employer succeeds, "the ball returns to the plaintiff's court, in which she must prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was in fact a pretext for discrimination." Goncalves v. Plymouth County Sheriff's Dep't, 659 F.3d 101, 105 (1st Cir. 2011).

For diligence, the Court may assume *arguendo* that a plaintiff has satisfied the prima facie case and proceed directly to the question of pretext. See Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) ("If we assume, *arguendo,* that the plaintiff established a prima facie case . . . the case boils down to what we have termed the ultimate question: did [plaintiff] present sufficient evidence that [defendant's] stated reason was a pretext for retaliation?").

Here, skipping to pretext becomes easier because Morales has conceded that Oriental "articulated a legitimate non-discriminatory reason to explain the adverse employment actions taken against [her]." (Docket No. 26 at 8). Those reasons were "that the termination of Plaintiff's employment occurred due to recurring violations of its policies and procedures which reflected on Plaintiff's performance." (Docket No. 19 at 14). Specifically, the undisputed facts show that Morales (1) suggested, possibly as a joke, to forge an employee's signature; (2) failed to inform her supervisor of an alleged difference in the Vault Reconciliation Report, a difference which may or may not have existed; (3) oversaw the printing of physically-damaged checks; and (4) acted irresponsibly as *a*, and disputably *the*, person responsible for completing provisional debit card reports.

"In assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006). Plaintiff must do more than "merely impugn the veracity of the employer's justifications; he must elucidate specific facts which would enable a jury to find that

**Civil No. 16-1535 (GAG)**

the reason given is not only a sham but a sham intended to cover up the employer's real [and unlawful motive] for discrimination." Id. (alteration in original) (quoting Mesnick, 950 F.2d at 824). These specific facts "can establish pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions *in the employer's proffered legitimate reasons* such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 37 (1st Cir. 2010) (emphasis in original) (citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000)). Here, Morales makes two arguments to show pretext, based on "arguably similar conduct" and "other evidence." Both fail.

*1. Arguably Similar Conduct*

Morales cites Velez v. Thermo King de Puerto Rico, Inc., to argue for pretext because Oriental did not punish younger employees, specifically González, "in response to arguably similar conduct." 585 F.3d 441, 449 (1st Cir. 2009). The first problem with her reliance on Velez is that this was just one of "several aspects of the evidence, that, taken together, [were] more than sufficient" to find pretext. Id. The other aspects—shifting explanations for plaintiff's termination, ambiguity of company policy, which caused uncertainty as to whether plaintiff violated it—are absent here.

The second problem is that no reasonable juror would find that González, despite using an unregistered provisional debit card and searching through Morales's belongings in her absence, engaged in arguably similar conduct as the First Circuit employed the term. (Docket No. 25-1 ¶¶ 12-15). In Velez, the plaintiff was accused of stealing and selling company property; the younger employees who engaged in "arguably similar conduct" were complicit in the theft and sale of the company property. 585 F.3d at 450. When Velez refers to "arguably similar conduct,"

10

it refers to conduct that is factually similar to the punished conduct. Velez would be persuasive if Morales had been discharged for using an unregistered provisional debit card and searching through others' belongings, or helping González do so. But she was not. Instead, she was terminated for various violations that had nothing to do with González's misbehavior.

Furthermore, even if the Court agreed that it was unfair to fire Morales and spare González, the Court's "role is not to second-guess the business decisions of an employer." Rossy v. Roche Prod., Inc., 880 F.2d 621, 625 (1st Cir. 1989); Davila v. Corporación de P. R. Para La Difusion Pública, 498 F.3d 9, 17 (1st Cir. 2007) ("[I]t is not our province to second-guess a decision to fire him as a poor performer."). Instead, the Court's role is to answer "simply whether the given reason was a pretext for illegal discrimination." Rossy, 880 F.2d at 625 (citing Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979)). And the fact that Oriental spared Gonzalez despite his misconduct does not prove that the reasons for discharging Morales were pretextual.

2. *Other Evidence of Pretext*

Morales's brief makes a second argument, referring to "other evidence," which fails because it is conclusory and undeveloped. As the First Circuit has held for almost three decades, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). And as the summary judgment standard states, "a nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation." Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313, 315 (1st Cir. 2016). Here, Morales's argument is: "Defendant among other things, treated elders differently, made discriminatory comments, and presents weaknesses, implausibilities, inconsistencies, incoherencies, and contradictions in the proffered legitimate reasons for Morales' discharge."

**Civil No. 16-1535 (GAG)**

(Docket No. 26 at 11). For support, Morales cites zero facts. As the summary judgment standard states, she cannot prevail by merely restating the law in a conclusory fashion.

But given Puerto Rico's serious problem of access to justice, the Court will consider some uncontroverted facts from Morales's submission that could put flesh on her argument's bones. See Natal Perez, 2018 WL 618598, at *3 ("the Court firmly believes in access to justice, the lack of which is a serious problem in Puerto Rico."). These facts concern disparate treatment and discriminatory remarks, and also fail to create a genuine issue of material fact as to pretext.

i. Disparate Treatment

Asserting disparate treatment, Morales states in the affidavit supporting her statement of additional facts that "[a]lmost all the elder operational managers . . . have been discharged and substituted by substantially younger employees." (Docket No. 25-1 at 14, ¶ 9). Unfortunately for Morales, this paragraph of her affidavit is inadmissible. Affidavits must be based on personal knowledge and set forth facts admissible in evidence. FED. R. CIV. P. 56(e). "[T]he requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001). Moreover, "affidavits that 'merely reiterate allegations made in the complaint, *without providing specific factual information made on the basis of personal knowledge*' are insufficient." Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 18 (1st Cir. 2007) (emphasis added) (quoting Santiago-Ramos, 217 F.3d at 53 (affidavit was sufficient because it included "specific factual information based upon her personal knowledge")).

Morales's affidavit lacks specificity because it proffers only one specific example of an "elder" being discharged: Fred Morales, 56, due to an alleged reorganization. (Docket No. 25-1 at 14, ¶ 10). One is far from "[a]lmost all." Moreover, her affidavit restates paragraph 18 of her

**Civil No. 16-1535 (GAG)**

complaint: "Almost all the elder operational managers and managers have been discharged and substituted by substantially younger employees . . . ." (Docket No. 3 ¶ 18). The lack of specificity and act of reiterating the allegations of her complaint prove that Morales lacks personal knowledge of the fact she is asserting. Therefore, the Court finds that there is insufficient evidence of disparate treatment that could indicate pretext.

      ii.  Discriminatory Remarks

Morales also lacks sufficient evidence of material facts surrounding discriminatory remarks. It is undisputed that Oriental's regional manager commented that Oriental wanted to bring in younger employees, new blood, and new ideas, and that Human Resources spoke of designing a "more youthful" uniform. (Docket No. 25-1 at 14, ¶ 8). But this is not a material fact because it lacks "the capacity to sway the outcome of the litigation under the applicable law." Iverson, 452 F.3d at 98. Precedent compels the Court to conclude this is "much too innocuous to transform routine managerial decisions into something more invidious." Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 56 (1st Cir. 2000) (comments that an employee looked old and that the company needed new blood were not enough to prove prima facie case of age discrimination); see also Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 75 (1st Cir. 2011) ("[T]here is nothing in the phrase 'new blood,' by itself, that refers to age."); Meléndez v. Autogermana, Inc., 622 F.3d 46, 55 (1st Cir. 2010) ("These remarks, even if ageist, are insufficient to overcome the compelling evidence proffered by Autogermana showing that Meléndez was dismissed due to poor work performance and they thus fail to raise the inference that the real reason for Meléndez's termination was age discrimination.").

In the end, Morales's argument for pretext simply fails because she cannot prove that Oriental's reasons for firing her were "a sham intended to cover up" age-based discrimination.

13

**Civil No. 16-1535 (GAG)**

Mesnick, 950 F.2d at 824. Even if the reasons for discharging her were false—that she did not honestly suggest forging a signature or that the Vault Reports were accurate—she cannot "merely impugn the[ir] veracity." Id. She must show that Oriental did not "believe[] its stated reason to be credible." Id. And that she has not done.

B. Willful Violation

Morales also alleges that Oriental willfully violated the ADEA. (Docket No. 3 ¶ 27). Section 7(b) of the ADEA provides for liquidated damages for a willful violation of the statute. A "violation is considered willful if 'the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 721 (1st Cir. 1994) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985)). Nevertheless, Morales proffers no facts to allow an inference of willful violation. In its brief, Oriental argues that the claim is meritless for that reason. (Docket No. 19 at 15). And in her response, Morales ignores the issue altogether. See Docket No. 26. The Court agrees with Oriental; Morales offered no evidence indicating a willful violation of the ADEA. Therefore, Oriental's motion for summary judgment on this matter is **GRANTED**.

C. Supplemental State Law Claims

Morales asserts supplemental state law claims under Law 100 and Law 80. In the absence of a valid federal claim, Oriental asks the Court to refrain from exercising supplemental jurisdiction over Law 100 and Law 80.

When deciding whether to assert supplemental jurisdiction, the Court "must exercise 'informed discretion.'" Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (quoting Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)). While not governed by a particular categorical rule, it "must weigh concerns of comity, judicial economy,

**Civil No. 16-1535 (GAG)**

convenience, and fairness." Id. The "proper inquiry is 'pragmatic and case-specific.'" Id. (quoting Roche, 81 F.3d at 257). As discussed below, the Court will exercise supplemental jurisdiction over Law 100 and Law 80. Given the stage of the litigation, judicial economy, convenience, and fairness compel the Court to decide the related state law causes of action.

*1. Law 100*

Law 100 bans employment age discrimination. "[I]t differs from the ADEA only with respect to how the burden-shifting framework operates." Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 18 (1st Cir. 2007). Neverthelesss, on the merits, claims under both statutes "are coterminous." Id. To establish a prima facie case, plaintiff must (1) demonstrate actual or constructive discharge and (2) allege the decision was discriminatory. Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001). If a plaintiff succeeds, "the burden shifts to the employer to prove by a preponderance of the evidence that it had 'just cause' for its actions." Id. In the absence of just cause, the employer "bears the burden of proving by a preponderance of the evidence that the decision was not motivated by age discrimination." Id.

Here the Court "need not wax longiloquent." Davila, 498 F.3d at 18. "The Law 100 plaintiff is then in same situation as an ADEA plaintiff after the defendant has articulated a legitimate, non-discriminatory reason for its actions." Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). Here, Oriental has articulated a legitimate reason for its actions, as Morales conceded. Thus, Morales is in the same situation of establishing pretext as in the ADEA analysis. And since Morales has not proven a genuine issue of material fact exists as to pretext under the ADEA, she cannot prove it as to Law 100 either. Thus, Oriental's motion for summary judgment is **GRANTED**. Morales's Law 100 claim is dismissed with prejudice.

15

Civil No. 16-1535 (GAG)

*2. Law 80*

Law 80 entitles an employee to severance pay from her employer if she is discharged without just cause. P.R. LAWS ANN., tit. 29, § 185a. Initially, Plaintiff bears the burden of alleging unjustified dismissal and proving actual dismissal. If she does so, "the employer must establish by a preponderance of the evidence that the discharge was made for good cause." Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 318 (D.P.R. 2010). "Just cause" exists when an employee is dismissed for "improper or disorderly conduct, negligent attitude towards his work, and violations of the employer's rules and regulations," among other reasons. Alvarez-Fonseca, 152 F.3d at 28. Morales's only argument under Law 80 is that "[t]here is no good cause for Morales' discharge for she did not commit any fault." (Docket No. 26 at 12). Aside from being conclusory and undeveloped, it is also false. As discussed earlier, the undisputed facts show numerous violations that, even as qualified, establish just cause. Morales herself conceded that Oriental articulated legitimate reasons for its adverse action. Moreover, the Court has found that the reasons for discharging her were not pretext for discrimination. Therefore, the Court finds that no genuine issue of material fact exists as to whether Morales was terminated for just cause. Summary judgment on this issue is **GRANTED**. Morales's Law 80 claim is dismissed with prejudice.

V. **Conclusion**

Summary judgment for defendant Oriental is **GRANTED**. Plaintiff Morales's ADEA and supplemental claims are dismissed with prejudice.

**SO ORDERED.**

In San Juan, Puerto Rico this 26th day of February, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge